40 Cal.3d 575 (1985)
709 P.2d 480
220 Cal. Rptr. 677
DANIEL P. MURRAY, Petitioner,
v.
THE STATE BAR OF CALIFORNIA, Respondent.
Docket No. S.F. 24901.
Supreme Court of California.
December 9, 1985.
*578 COUNSEL
Daniel P. Murray, in pro. per., for Petitioner.
Herbert M. Rosenthal, Truitt A. Richey, Jr., Richard J. Zanassi and Marilyn Winch for Respondent.
OPINION
THE COURT.[*]
This is a proceeding to review a recommendation of the State Bar Review Department that petitioner, Daniel Murray, be suspended from the practice of law for two years, that execution of the suspension be *579 stayed, and that petitioner be placed on probation for two years with specified conditions including actual suspension for one year.[1]

I.
On January 5, 1984, petitioner was served with a notice to show cause. The notice charged petitioner with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068), wilfully violating rule 8101 of the Rules of Professional Conduct, and committing acts involving moral turpitude and dishonesty within the meaning of Business and Professions Code section 6106.[2]
Petitioner did not file an answer to the notice to show cause. Instead, petitioner and the examiner for the State Bar entered into a stipulation as to the facts and the conclusions of law. Both parties agreed to waive the right to a formal hearing before a three-member hearing panel and limit any evidence submitted to facts in mitigation or aggravation, and the appropriate level of discipline.
The referee found that petitioner commingled client funds with his own personal funds, misappropriated and converted these funds to his own use, failed to account for and/or pay over the funds upon demand, unilaterally determined and withdrew his own fees from the trust account without client approval, and disbursed estate funds without prior court approval.
The referee recommended a two-year probationary period subject to conditions including six months actual suspension and restitution to the Client Security Fund. While the review department adopted all of the panel's findings of misconduct, it declined to adopt the findings concerning factors in mitigation. Consequently, the proposed discipline was increased from six months to one year of actual suspension and the terms of probation included a requirement that petitioner reimburse the estate for the accumulated interest earned during the period the beneficiaries were deprived of the use of their funds.[3]
*580 Petitioner urges this court to reconsider the sanctions recommended by the State Bar in light of his claim that the acts of misconduct were committed without criminal intent. Petitioner maintains that his conduct does not warrant the degree of discipline recommended and asserts that the appropriate discipline would be a public reproval or a referral back to the State Bar Court for reconsideration in light of the fact that full restitution was made to the estate.

II.
Petitioner was admitted to the practice of law in the State of California in 1963. He has no prior disciplinary record.
The essential facts are not in dispute.[4] The misconduct occurred between 1978 and 1981. In December of 1978, petitioner was retained by Ms. Mosley and Mr. William D. Goodeill to handle the probate of the will of William H. Goodeill. On January 20, 1979, petitioner filed a petition on behalf of the estate of William H. Goodeill in Alameda County Superior Court. Eight months later his clients were named as executors.
Throughout his representation of the executors of the Goodeill estate, petitioner maintained a trust account in his own name. During the period from June of 1979 through June of 1981, petitioner received and disbursed funds from this account on behalf of the Goodeill estate.
From June 1, 1979, through September 14, 1979, petitioner received $26,339 in trust on behalf of the Goodeill estate. In July of 1979, petitioner unilaterally determined his own fee ($750) and without court approval, withdrew that amount from the trust account. One month later, petitioner withdrew $500 in cash and $292 in the form of a check from the account for his personal use. Petitioner paid the monthly rental for his business office with these funds. During this time, petitioner also disbursed $20,300 from the trust account to the heirs of the estate without having first obtained a court order for distribution.[5]
After the payment of estate debts and the disbursement of funds, there should have been $5,680 left in trust for the Goodeill estate. In February of 1980, the balance in the trust account fell below that amount, and the account was closed in June of 1981. At the time of closing, there were no funds in the account.
*581 The final charge against petitioner involves his failure to remit the remaining trust funds to the executors and to account for his disposition of the funds. On October 30, 1981, petitioner was substituted out as attorney for the executors. Over the next two and one-half years, petitioner ignored numerous communications from the executors' new attorney notifying him of the discrepancy. He did not examine his records or attempt to resolve the problem in any way. At the disciplinary proceeding, petitioner testified that he did not provide restitution during that time because he did not realize that he owed the disputed amount. Petitioner had not kept accurate records of the checks received by the estate and, therefore, could not be certain of the balance remaining in the account.
In making its recommendation, the hearing panel of the State Bar Court considered several mitigating factors. It recognized that petitioner had no prior disciplinary record, that he was experiencing marital problems, "depression," and "overstress" during the period in which he was handling the Goodeill probate, and that he was willing to make restitution in the near future. The hearing panel also noted favorably petitioner's "candid and credible" testimony concerning his negligent management of the Goodeill estate funds.
In contrast, the review department found that petitioner had failed to present any substantial factors in mitigation or demonstrate remorse. At the time of the review department's hearing, petitioner had not made any effort to provide restitution. For these reasons, the review department modified the hearing panel's recommendation.

III.
(1a) Petitioner's principal contention is that he lacked the requisite mental state necessary for a violation of the disciplinary rules. More specifically, petitioner argues that the State Bar failed to provide sufficient evidence to support its allegations of professional misconduct in that it made no showing that petitioner's actions were motivated by bad faith or a conscious desire to injure his client.
Although this court has long recognized the problems inherent in disciplining attorneys for negligence, carelessness or inexperience, it has never held that the absence of proof of criminal intent operates as a defense  in *582 part or in whole  to charges of professional misconduct.[6] This court has explained that "[w]hile `good faith of an attorney is a matter to be considered in determining whether discipline should be imposed for acts done through ignorance or mistake' (Call v. State Bar (1955) 45 Cal.2d 104, 111 [287 P.2d 761]), the lack of an evil intent does not immunize the attorney's conduct from a finding of moral turpitude." (Fitzsimmons v. State Bar (1983) 34 Cal.3d 327, 331 [193 Cal. Rptr. 896, 667 P.2d 700].) In fact, this court has consistently held that "[g]ross carelessness and negligence constitute violations of the oath of an attorney to faithfully discharge his duties to the best of his knowledge and ability, and involve moral turpitude as they breach the fiduciary relationship owed to clients." (Giovanazzi v. State Bar (1980) 28 Cal.3d 465, 475 [169 Cal. Rptr. 581, 619 P.2d 1005]; accord Simmons v. State Bar (1970) 2 Cal.3d 719, 729 [87 Cal. Rptr. 368, 470 P.2d 352].)
(2) Thus, in a case involving charges of commingling and misappropriation comparable to those in the present case, this court stressed that "as far as the client is concerned the result is the same whether his money is deliberately misappropriated by an attorney or is unintentionally lost by circumstances beyond the control of the attorney." (Peck v. State Bar (1932) 217 Cal. 47, 51 [17 P.2d 112].) Moreover, "[t]he mere fact that the balance in an attorney's trust account has fallen below the total of amounts deposited in and purportedly held in trust, supports a conclusion of misappropriation." (Giovanazzi v. State Bar, supra, 28 Cal.3d 465, 474, italics added.)
(3) Petitioner submits that he has made full restitution to the Goodeill estate and, therefore, urges that the matter be referred back to the State Bar Court for consideration of this factor as a mitigating circumstance. This court has frequently stated that "restitution made only under the pressure of a forthcoming disciplinary investigation is entitled to no weight as a mitigating circumstance." (Doyle v. State Bar (1982) 32 Cal.3d 12, 24 [184 Cal. Rptr. 720, 648 P.2d 942]; see Fitzpatrick v. State Bar (1977) 20 Cal.3d 73, 88 [141 Cal. Rptr. 169, 569 P.2d 763]; Sevin v. State Bar (1973) 8 Cal.3d 641, 646 [105 Cal. Rptr. 513, 504 P.2d 449].)
*583 Here, petitioner was unwilling to make restitution prior to that time because repayment would have entailed selling a piece of property and suffering a resultant loss of tax benefits. Consequently, despite numerous requests that he remit the remaining funds, petitioner refused to make restitution even on a partial or interim basis. Under these circumstances, this court does not find petitioner's restitution to be a persuasive mitigating factor.
(4a) Petitioner's final contention is that the review department's recommendation of a one-year suspension is excessive. He argues that a mere public reprimand would be sufficient.
(5) The principal objective in disciplinary proceedings is to protect the public and the courts, and preserve the integrity of, and confidence in the legal profession. (See Giovanazzi v. State Bar, supra, 28 Cal.3d 465, 474; Bradpiece v. State Bar (1974) 10 Cal.3d 742, 748 [111 Cal. Rptr. 905, 518 P.2d 337]; see also Jackson v. State Bar (1979) 23 Cal.3d 509, 514 [153 Cal. Rptr. 24, 591 P.2d 47].) In determining the proper sanction consistent with this purpose, this court must consider all relevant factors and mitigating circumstances on a case-by-case basis. (See Bate v. State Bar (1983) 34 Cal.3d 920, 924 [196 Cal. Rptr. 209, 671 P.2d 360]; Bernstein v. State Bar (1972) 6 Cal.3d 909, 919 [101 Cal. Rptr. 369, 495 P.2d 1289].)
(4b) In this case, petitioner commingled and misappropriated funds entrusted to him, unilaterally determined and withdrew his fees from those funds, and made disbursements without court approval. His refusal to account to the executors of the estate in the face of their repeated demands clearly demonstrates that petitioner abused the trust placed in him. (See Jackson v. State Bar (1979) 25 Cal.3d 398, 403 [158 Cal. Rptr. 869, 600 P.2d 1326]; Brody v. State Bar (1974) 11 Cal.3d 347, 350 [113 Cal. Rptr. 371, 521 P.2d 107].)
(6) Breaches of the fiduciary duty owed by an attorney to his client undermine public confidence in the profession. Accordingly, this court has emphasized that when an attorney's conduct disregards this duty, severe discipline is warranted. (Jackson v. State Bar, supra, 25 Cal.3d 398, 405 [disbarment]; Brody v. State Bar, supra, 11 Cal.3d 347, 351 [one-year actual suspension].) (4c) Petitioner's conduct in this matter violated his oath and duties as an attorney and involved acts of moral turpitude. This court concludes that the seriousness of petitioner's misconduct warrants more severe discipline than a public reprimand.
Petitioner's misappropriation of client trust funds unquestionably constitutes serious misconduct that could warrant disbarment in the absence of extenuating circumstances. (Doyle v. State Bar, supra, 32 Cal.3d 12, 23; *584 Cain v. State Bar (1979) 25 Cal.3d 956, 961 [160 Cal. Rptr. 362, 603 P.2d 464].) Petitioner's argument that the misappropriation was unintentional and therefore should not be regarded as serious misconduct is unpersuasive. As noted above, the mere "fact that the balance in an attorney's trust account has fallen below the amount due his client will support a finding of wilful misappropriation." (Jackson v. State Bar, supra, 25 Cal.3d 398, 403, italics added; Brody v. State Bar, supra, 11 Cal.3d 347, 349-350.) (1b) Moreover, a finding of wilful misappropriation has also been sustained where, as here, the attorney has failed to respond to his client's queries regarding funds held in trust. (Jackson v. State Bar, supra, 25 Cal.3d 398, 403.)
Petitioner's breach of professional ethics also included commingling his client's money with his own. (Rule 8-101.) (7) An attorney violates rule 8-101 when he or she fails to deposit and manage funds in the manner delineated by the rule, even if this failure does not harm the client. (Vaughn v. State Bar (1972) 6 Cal.3d 847, 858 [100 Cal. Rptr. 713, 494 P.2d 1257].) In this case, however, petitioner's clients did suffer harm.[7] Petitioner failed to maintain adequate records and accounts and, as a result, deprived his clients of the use of their funds for approximately four years.
In addition, the stipulated findings clearly establish that petitioner withdrew funds from the estate account as payment for his services without prior court approval. (8) "It is well settled that an attorney may not unilaterally determine his own fee and withhold trust funds to satisfy it even though he may be entitled to reimbursement for his services." (Brody v. State Bar, supra, 11 Cal.3d 347, 350, fn. 5; see Crooks v. State Bar (1970) 3 Cal.3d 346, 358 [90 Cal. Rptr. 600, 475 P.2d 872]; Most v. State Bar (1967) 67 Cal.2d 589, 597 [63 Cal. Rptr. 265, 432 P.2d 953].) Petitioner's conduct in this regard is specifically prohibited by rule 8-101(a)(2).
(4d) Petitioner asserts in mitigation that he has no prior disciplinary record and that during the period in which the acts of misconduct occurred he was undergoing emotional stress related to domestic problems. The record reflects that the review department considered these factors and was not favorably impressed by petitioner's attitude or his efforts regarding restitution.
Therefore, in light of the amount of funds misappropriated and petitioner's deliberate refusal to account to his clients, the discipline recommended by the review department is not excessive. A sanction of one year's actual *585 suspension and probation with conditions is not inconsistent with this court's holdings in similar cases of commingling and misappropriation by an attorney with no disciplinary record. (See e.g., Brody v. State Bar, supra, 11 Cal.3d 347, 350 [one-year actual suspension]; Bradpiece v. State Bar, supra, 10 Cal.3d 742, 748 [one-year actual suspension, four years probation]; Persion v. State Bar (1973) 9 Cal.3d 456, 462 [107 Cal. Rptr. 708, 509 P.2d 524] [one-year actual suspension, two years probation].)
Accordingly, this court orders that petitioner be suspended from the practice of law for two years, that execution of the suspension be stayed and that he be placed on probation for two years with actual suspension for one year, subject to the conditions of probation recommended by the State Bar Review Department. It is further ordered that petitioner comply with subdivisions (a) and (c) of rule 955, California Rules of Court, within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.
NOTES
[*] Before Bird, C.J., Mosk, J., Broussard, J., Reynoso, J., Grodin, J., Lucas, J., and Long, J.[]

[] Assigned by the Chairperson of the Judicial Council.
[1] Recommended probationary conditions require petitioner to (1) make restitution to the Client Security Fund of the State Bar of California for the principal amount of the misappropriated funds and to his client for the accumulated interest earned at the rate of 7 percent per annum, (2) report quarterly during the probation period regarding compliance with all provisions of the State Bar Act and Rules of Professional Conduct, (3) answer any inquiries from State Bar representatives regarding fulfillment of probationary terms, except to the extent prohibited by specific privileges, (4) take and pass the Professional Responsibility Examination, and (5) comply with the provisions of rule 955, California Rules of Court.
[2] Unless otherwise specified, all references to rules refer to the Rules of Professional Conduct, and all statutory references are to the Business and Professions Code.
[3] The disciplinary board of the State Bar acknowledges that restitution of the principal amount of the misappropriated funds and the accumulated interest has been made.
[4] Petitioner does not dispute the facts of this case as set forth in the stipulation.
[5] He testified in the disciplinary proceeding that he was aware at the time he disbursed the estate funds that probate court approval is required prior to such a disbursement.
[6] Petitioner points to Lewis v. State Bar (1981) 28 Cal.3d 683 [170 Cal. Rptr. 634, 621 P.2d 258] to support his contention that intent is a required element for violations of the Rules of Professional Conduct. Lewis does not delineate such a requirement. In fact, the holding in that case tends to undermine petitioner's argument. In Lewis, this court noted that rule 6-101 permits the imposition of discipline for "`mere ignorance of the law.'" (Lewis, supra, 28 Cal.3d 683, 689.)

Rule 6-101 applies to misconduct that occurs when an attorney practices law in an area in which he or she is inexperienced. In the instant proceeding petitioner is neither charged with a violation of rule 6-101 nor has he maintained that his misconduct resulted from his unfamiliarity with probate proceedings.
[7] Petitioner's commingling of trust funds alone could warrant up to three years of actual suspension. (Fitzpatrick v. State Bar, supra, 20 Cal.3d 73, 87; § 6077.)